UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SAID MANSOR SADAT,
*Petitioner*,

v.

MARKWAYNE MULLIN, *et al.*,
*Respondents.*

No. 1:26-cv-3040-MSN-LRV

**ORDER**

This matter comes before the Court on Said Mansor Sadat's ("Petitioner") Petition for Writ of Habeas Corpus (ECF 1) in which he challenges the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). ICE has held Petitioner in immigration detention since December 16, 2024. Petitioner argues that his continued detention violates 8 U.S.C. § 1231, as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). For the reasons that follow, the Court concludes that Petitioner's continued detention violates 8 U.S.C. § 1231, grants his Petition, and denies the Federal Respondents' motion for partial vacatur of the Court's show cause order (ECF 10).

## I. BACKGROUND

Petitioner, a citizen of Afghanistan, entered the United States on August 14, 2015, pursuant to a student visa. ECF 6-1 ¶¶ 5, 6. The visa authorized him to remain in the country until December 1, 2021; however, Petitioner remained in the United States beyond that date without authorization. *Id.* ¶ 6. On August 12, 2016, Petitioner applied for asylum and withholding of removal. ECF 1 ¶ 14.

On November 14, 2024, Petitioner was arrested for failure to appear at proceedings related to a potential probation violation.[1] *Id.* ¶ 18. He was later acquitted of those charges, but the next day Loudon County Sherriff's Office contacted Immigration and Customs Enforcement ("ICE") with an immigration related query about the Petitioner. ECF 1 ¶ 18; ECF 6-1 ¶ 9. ICE instructed Petitioner to report to an ICE field office on December 16, 2024. ECF 6-1 ¶ 9.

Petitioner appeared as directed at the ICE Washington Field Office on December 16, 2024. ECF 6-1 ¶ 10. He was taken into custody, placed into removal proceedings, and issued a Notice to Appear ("NTA"). *Id.*; ECF 6-2. Petitioner was charged with being removable under 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa. ECF 6-1 ¶ 10. In March and April 2025, respectively, Petitioner filed an Application to Register Permanent Residence or to Adjust Status, as well as an Application for Aylum and for Withholding of Removal. *Id.* ¶¶ 12-13. On May 20, 2025, the immigration court held Petitioner's Merits Hearing. *Id.* ¶ 14. On June 10, 2025, the Immigration Judge issued a written decision denying Petitioner's applications for relief and ordering his removal from the United States to Afghanistan. *Id.* ¶ 15; ECF 6-3. Less than a month later, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"). ECF 6-1 ¶ 16.

On March 5, 2026, the BIA rejected Petitioner's appeal and affirmed the decision ordering his removal. ECF 6-1 ¶ 17; ECF 1-1. Petitioner has filed a petition for review of that decision with the appellate court, however, that petition remains pending. ECF 1 ¶ 24. Despite a final order of removal issued in March, the Federal Respondents have been unable to remove Petitioner. On April 7, 2016, ICE agents submitted a travel document request to the government of Afghanistan to obtain Petitioner's travel documents for removal to Afghanistan. ECF 6-1 ¶ 18. Petitioner

[1] Federal Respondents attach to its opposition documents related to Petitioner's criminal history. They do not, however, argue that Petitioner's criminal history justifies his current detention. As such, this opinion focuses on Federal Respondents' argument that Petitioner's detention is justified by the alleged reasonable likelihood of his removal.

received two warnings for failure to depart – one on April 7, 2026, and one on May 4, 2026 – both of which he refused to sign. ECF 6-4 at 1; ECF 6-5 at 1.

Petitioner was also provided two notices of file custody review, informing him that his custody status would be reviewed on June 3, 2026. ECF 6-4 at 3; ECF 6-5 at 3. After the June 3, 2026, custody review ICE informed Petitioner he would not be released. ECF 6-1 ¶ 20. The review "considered factors including criminal convictions and criminal conduct, immigration history, and failing to appear for judicial and other proceedings." *Id.* Petitioner's second custody review on September 9, 2026, similarly did not result in his release. *Id.* ¶ 21. Federal Respondents provide no explanation for this denial, and Petitioner was merely informed that ICE was "currently working with the government of Afghanistan to secure a travel document for his removal[.]" *Id.* To present day, Petitioner remains detained in the Caroline Detention Facility in Bowling Green, Virginia. ECF 1 ¶ 25.

On September 14, 2026, the habeas corpus petition was filed in this case. ECF 1. On September 15, 2026, this Court entered an order that included a requirement that "Petitioner IS NOT to be removed or transferred from this district for any reason without this Court's permission during the pendency of this habeas action." ECF 3 (emphasis in original). On October 12, 2026, Federal Respondents moved to partially vacate that order. ECF 10. Federal Respondents explained that they "anticipate being able to remove Petitioner to Afghanistan in the near future[.]" *Id.* ¶ 5. As such, they request a vacatur of the movement restriction so that they may "effectuate Petitioner's removal to Afghanistan." *Id.* Petitioner filed an opposition to that motion on October 13, 2026. ECF 11.

## II. DISCUSSION

Under 28 U.S.C.§ 2241, district courts may grant habeas relief to petitioners who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner argues that his extended detention with no foreseeable likelihood of removal violates 8 U.S.C. § 1231—the statute governing post-removal detention—entitling him to habeas relief. The Court agrees.

### A. Legal Background

8 U.S.C. § 1231 governs the detention and removal of noncitizens following final orders of removal. Under 8 U.S.C. § 1231(a) DHS "shall detain" and physically remove noncitizens from the United States during a 90-day "removal period." 8 U.S.C. § 1231(a)(1)(A), (2). That period commences upon one of three events: (i) when an removal becomes administratively final; (ii) if the removal order is judicially reviewed and a court orders a stay of the removal, the date of the court's final order; or (iii) if a noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement. 8 U.S.C. §1231(a)(1)(B).

After the 90-day deadline for removal, DHS may release a noncitizen subject to terms of supervision. 8 U.S.C. § 1231(a)(6). DHS may also continue to detain a noncitizen in certain circumstances, including where the noncitizen is inadmissible or DHS determines that the noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *see also Castaneda v. Perry*, 95 F.4th 750, 755 (4th Cir. 2024). "[I]n authorizing such post-removal-period detention, the statute does not specify a time limit on how long DHS may detain" a noncitizen." *Castaneda*, 95 F.4th at 756 (internal quotation marks and citations omitted).

The Supreme Court, however, has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite detention." *Zadvydas*, 533 U.S. at 682. Thus, in *Zadvydas*, the Supreme Court construed the statute to contain an implicit limit on terms of detention, "the application of which is subject to federal-court review." *Id.* Under *Zadvydas*, a noncitizen's detention pursuant to Section 1231 is presumptively unlawful and violates due process if his detention extends for more than six months and the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. If a petitioner makes this showing, the burden shifts to the government to rebut the showing. *Id.* "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [will] shrink." *Id.*

**B. Application to Petitioner**

The Federal Respondents concede, as they must, that Petitioner has been detained for more than six months. ECF 6 at 5. The question thus becomes whether Petitioner has provided good reason to show that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. Petitioner has met this bar.

The government's actions since Petitioner's detention and final order of removal confirm that his deportation to Afghanistan is unlikely. The government has not been able to effectuate Petitioner's removal despite keeping him detained for almost two years and despite the over seven months that have passed since he received a final order of removal. Such delays strongly suggest that the government is not reasonably likely to remove Petitioner now. *See, e.g.*, *Douglas*, 2025 WL 2997585, at *4 (concluding that the government's failure to remove petitioner during the nine years after his order of removal and the three-and-a-half months of his detention constituted evidence against the likelihood of removal); *Zavvar v. Scott*, No. 25-cv-2104, 2025 WL 2592543,

at *7 (D. Md. Sept. 8, 2025) (concluding that removal was not reasonably foreseeable where, for seventeen years after petitioner's removal order, respondents either made no efforts to remove petitioner or those efforts were unsuccessful).

Indeed, Federal Respondents requested documents from the Government of Afghanistan months ago on April 7, 2026, but that attempt appears to have been unsuccessful. ECF 6-1 ¶ 18. Although Federal Respondents told Petitioner that "ICE is currently working with the government of Afghanistan to secure a travel document for his removal," there is no evidence of those efforts, and no travel documents have been produced. ECF 6-1 ¶ 21. Federal Respondents do not represent that Afghanistan has, or will ever, respond. This indeterminate assertion that DHS has "request[ed] . . . travel documents . . . is not sufficient evidence to rebut [P]etitioner's showing that he is unlikely to be removed in the reasonably foreseeable future." *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *see also, e.g.*, *Gilali v. Warden of McHenry Cnty. Jail*, No. 19-cv-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) (concluding that, although the "respondent asserts that [the petitioner's] travel document requests . . . remain pending and [DHS] continues to follow up on the documents' status . . . [this] does not make removal likely in the reasonably foreseeable future"); *Dao v. Bondi*, No. 2:25-cv-02340-LK, 2026 WL 18626, at *4 (W.D. Wash. Jan. 2, 2026) ("General indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of [p]etitioner . . . ." (quoting *Zhao v. Kelly*, No. 17-cv-777-BRO (KES), 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017))).

Federal Respondents' latest submission does not change the analysis. They ask this Court to vacate its removal restriction because Federal Respondents "anticipate being able to remove Petitioner to Afghanistan in the near future[.]" ECF 10 ¶ 5. Federal Respondents attach a single

exhibit to support this otherwise conclusory statement. Federal Respondents describe, in a footnote, the exhibit is a "manifest showing [Petitioner] is tentatively set for a departure flight to Afghanistan on November 3, 2026." ECF 10 fn. 1. This so-called "manifest" is a screenshot of an excel spreadsheet that includes the names, demographics, and basic immigration information for three individuals, including Petitioner. ECF 10-1. The only potential reference to a removal flight is the title of the excel spreadsheet which includes the phrase: "Afghanistan … Depart 11-03-2026." *Id.* This submission does not move the needle. It provides no travel documents for Petitioner. While it suggests Petitioner may be on a fight to Afghanistan on November 3, 2026, there is no evidence Afghanistan would accept Petitioner when he arrived. This is especially true given that there is evidence in other circumstances of persons being turned away after the United States attempted to remove them to a different country. *Garcia Cruz v. Hott*, No. 2:26CV234, 2026 WL 1103566, at *2 (E.D. Va. Apr. 23, 2026) (explaining that El Salvadorian and Guatemalan immigrants were rejected by Mexican officials at the border).

The Federal Respondent's showing is particularly inadequate given the length of time Petitioner has already been detained. *See Zadvydas*, 533 U.S. at 701 (cautioning that, as the period of detention grows, what constitutes the "reasonably foreseeable future" will shrink). After almost two years of detention, the Federal Respondents can offer no next steps as to Petitioner's removal or assurances that Petitioner's detention will be finite. *See Castaneda*, 95 F.4th at 757 (explaining that *Zadvydas* applies when detention may be "indefinite" or "potentially permanent" (emphasis omitted)).

The Federal Respondents' sole retort is that Petitioner is also to blame for the government's inability to remove him. ECF 6 at 6 ("Petitioner has refused to comply with removal efforts."). As evidence of this, Federal Respondents cite to his refusal to sign two warnings for failure to depart.

ECF 6 at 6. Federal Respondents fail to explain what actual efforts Petitioner has taken to thwart his removal. They provide no evidence of refusing to provide information or otherwise cooperate with attempts to remove him. For his part, Petitioner provides evidence of the opposite—that he has actively provided all information that has been asked of him. Petitioner details attending monthly meetings with deportation officers, providing identity documents to ICE, and being told by ICE that he has been cooperative and that nothing more was needed from him. ECF 9-1 at ¶¶ 9-10. There is simply no evidence in the record that evidences Petitioner's refusal to cooperate. *Alizada v. Blanche*, No. 2:26-CV-02093-TL, 2026 WL 2085850, at *5 (W.D. Wash. July 20, 2026) (finding refusal to sign three warnings for failure to depart, *inter alia*, did not represent a refusal to cooperate); *Mendoza Martinez v. Parra*, No. 26-CV-24255, 2026 WL 2318024, at *6 (S.D. Fla. Aug. 11, 2026) (finding Petitioner entitled to release where the federal respondents did not "identify any action taken by Petitioner that has actually impeded a legitimate effort at obtaining travel documents or securing … agreement to accept Petitioner.").

The government may not, as it has here, "detain a noncitizen and then sit on its hands." *Douglas*, 2025 WL 2997585, at *5. "Such inaction, or lack of progress in effectuating removal, is precisely what *Zadvydas* forbids." *Id.* Petitioner is thus entitled under *Zadvydas* to issuance of a writ of habeas corpus and release.

## III. CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that Petitioner's continued detention is unlawful under *Zadvydas* and violates his right to due process. Accordingly, it is hereby

ORDERED that the Petition is GRANTED; it is further

ORDERED that Federal Respondent's Motion for Partial Vacatur Based on Intervening Events, ECF 10, is DENIED; it is further

ORDERED that Federal Respondents immediately release Petitioner under an Order of Supervision pursuant to § 1231(a)(3); and it is further

ORDERED Federal Respondents and any of Federal Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
Michael S. Nachmanoff
United States District Judge

October 13, 2026
Alexandria, Virginia